FILED
2024 Mar-22  AM 10:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| ROBBY DALE HESTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.:  6:23-cv-00389-JHE |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Robby Dale Hester ("Hester") seeks review, pursuant to 42 U.S.C. § 405(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his applications for supplemental security income ("SSI") and for a period of disability and disability insurance benefits ("DIB").  (Doc. 1).  Hester timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **REVERSED,** and this action is **REMANDED** for further proceedings.

### I. Factual and Procedural History

On February 11, 2021, Hester filed an application for a period of disability and DIB, and protectively filed an application for SSI.  (Tr. 12).  For each, Hester alleged disability beginning

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 12).

January 11, 2021.  (Tr. 12).  The Commissioner denied Hester's claims on June 30, 2021, and denied them again upon reconsideration on February 3, 2021. (Tr. 12).  Hester timely requested a hearing before an Administrative Law Judge ("ALJ").  Following a hearing on June 23, 2022, the ALJ entered an unfavorable decision denying Hester's application for benefits in a decision dated July 7, 2022. (Tr. 12–28).  Hester sought review by the Appeals Council, but it denied his request for review on January 23, 2023.  (Tr. 1). On that date, the ALJ's decision became the final decision of the Commissioner.  On March 24, 2023, Hester initiated this action.  (Doc. 1).

Hester was forty-eight years old on his alleged onset date.  (Tr. 26).  Hester has past relevant work as a pipe fitter/pipe fitter supervisor.  (Tr. 26).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id*. It is "more than a scintilla, but less than a preponderance." *Id*.

---

[2] In general, the legal standards applied are the same whether a claimant seeks SSI or DIB. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan,* 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3]  The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505 (a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520 (a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is engaged in substantial gainful activity

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

(2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment meets or equals an impairment listed by the SSA;

(4) whether the claimant can perform his or her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1312 (11th Cir. 2021). If a claimant satisfies Steps One and Two, he or she is automatically found disabled if he or she suffers from a listed impairment. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). "Once a claimant proves that she can no longer perform her past relevant work, the burden shifts to the Commissioner to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Id.* (cleaned up).

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the five-step evaluation process, the ALJ made the following findings:

At Step One, the ALJ found that Hester had not engaged in substantial gainful activity since his alleged onset date. (Tr. 15). At Step Two, the ALJ found that Hester has the following severe impairments: lumbar disc protrusion, lumbar spondylosis with radiculopathy, chronic compression deformity of the lumbar spine, depressive disorder, anxiety disorder, and somatic symptom disorder. (Tr. 15). At Step Three, the ALJ found that Hester does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 17).

Before proceeding to Step Four, the ALJ determined Hester's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Hester has the RFC

4

to perform a reduced range of light work as defined in 20 CFR 404.1567(b) and 416.967(b), except he can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. He can frequently balance and occasionally stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to vibration, extreme cold, heat, humidity, fumes, odors, and other pulmonary irritants, as well as any exposure to hazards. He can understand, remember, and carry out simple instructions and maintain concentration for two-hour periods. Changes in the workplace should be gradual and occur no more than occasionally.

(Tr. 19).

At Step Four, the ALJ found, relying in part on hearing testimony from a vocational expert, that Hester is unable to perform his past relevant work. (Tr. 26). At Step Five, the ALJ found that, considering Hester's age, education, work experience, and RFC, Hester is able to perform jobs that exist in significant numbers in the national economy. (Tr. 27). Therefore, the ALJ determined Hester has not been under a disability from January 11, 2021 through the date of the decision. (Tr. 28). Thus, the ALJ denied his claim. (Tr. 28).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Williams*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Hester contends the ALJ failed to properly consider the medical evidence (doc. 15 at 11–14), improperly evaluated the opinion evidence submitted by state agency physicians (*id.* at 14–

5

17), and failed to properly evaluate Hester's credibility (*id.* at 17–13).  The undersigned addresses the first and third of these, which in combination require remand.[4]

### A. The ALJ Mischaracterized Portions of the Record

Hester contends that the ALJ mischaracterized the record medical evidence to support her conclusion that Hester "has denied a variety of symptoms associated with more severe low back problems, including weakness, lower extremity numbness, incontinence, falling, and an abnormal gait." (Doc. 15 at 11) (quoting Tr. 21).  Hester argues that he frequently reported pain symptoms, including symptoms the ALJ says he denied.  (*Id.*).  Hester also contends that the ALJ improperly determined that Hester's pain was relieved by walking and that Hester engaged in fishing and camping.  (*Id.* at 13–14).

To support that Hester denied the symptoms listed above, the ALJ cited, generally, Exhibits 1F, 3F, 4F, 9F, 10F, and 11F.  (Tr. 21–22).  Exhibit 1F contains records from St. Vincent's Ascension Birmingham ("St. Vincent's") dated from December 9, 2020, to January 13, 2021.  (Tr. 290–335).  The only portion of these records following Hester's January 11, 2021 onset date is a visit on January 13, 2021, during which Hester received an MRI of his lumbar spine.  (Tr. 299–300).  However, there is no indication that Hester reported (or failed to report) any symptoms during this MRI; the record is simply a synopsis of the procedure and its findings.  Prior to Hester's onset date, on December 9, 2020 Hester denied weakness, numbness, and difficulty with ambulation at a visit for worsening low back pain following an injury sustained two weeks before while Hester was moving firewood.  (Tr. 305, 309).

---

[4] Since the ALJ will have to conduct a new assessment of the opinion evidence on remand, it is unnecessary to discuss whether she erred in the evaluation here.

Exhibit 3F is another series of St. Vincent's records. (Tr. 359–429). These records are dated January 13, 2021, to March 9, 2021. Again, though, these are almost entirely descriptions of MRIs dated January 13, 2021, and March 9, 2021. (*See id.*). There are no descriptions within the relevant time period of what Hester reported or failed to report. However, this exhibit does contain an excerpt from a January 6, 2021 visit at which Hester reported back pain radiating into both of his legs, accompanied by numbness and tingling, but denied incontinence, imbalance, falls, or weakness. (Tr. 391).

Exhibit 4F is a record of Hester's February 25, 2021, and April 6, 2021, visits to Dr. Ron B. Pitkanen for a bilateral L2 transforaminal epidural steroid injection. (Tr. 430–37). During the February 25 visit, Hester reported low back pain radiating into his bilateral legs and feet. (Tr. 437). He complained of weakness in both legs and gait and balance changes, but denied incontinence. (*Id.*). At the April 6, 2021, visit, Hester reported low back pain radiating into his left testicle, groin, and anterior leg, with occasional pain in his right leg. (Tr. 434). Hester again reported gait and balance changes and again denied incontinence. (*Id.*).

Exhibit 9F contains records of Hester's treatment by Dr. Jerry V. Mosley between May 18, 2020, and January 11, 2021. (Tr. 510–38). Hester's January 11, 2021, visit lists COVID-19 as his chief complaint and lower back pain as a subsidiary complaint. (Tr. 512). As to neurological symptoms, the records indicate Hester denied numbness. (Tr. 513). Dr. Mosley instructed Hester to follow up in 14 weeks. (Tr. 514). The portions of these records that support the ALJ's claim are pre-onset-date visits for unrelated symptoms: a December 1, 2020 visit for a COVID-19 test, during which the notes indicated Hester denied abnormalities of gait (tr. 517–18); a September 14, 2020 visit for shortness of breath, during which Dr. Mosley's notes indicate Hester denied changes in bowel habits (tr. 519–21); an August 6, 2020 visit for a COVID-19 retest, with Dr. Mosley's

notes indicating Hester denied changes in bowel habits and numbness (tr. 525–26); a July 27, 2020 visit for COVID-19 during which Hester denied changes in bowel habits, abnormalities of gait, and numbness (tr. 527–32); a July 13, 2020 visit for a COVID-19 test during which Dr. Mosely indicates that Hester denied abnormalities of gait (tr. 533–34); and a May 18, 2020 visit for a hernia, at which the notes indicate Hester denied urinary incontinence, gait abnormality, numbness, and weakness (tr. 535–38).

Exhibit 10F records additional visits to Dr. Pitkanen after the first set of epidural injections.[5]  (Tr. 539–58).  On August 9, 2021, Dr. Pitkanen saw Hester after the injections proved to provide "good but only temporary benefit."  (Tr. 550–53).  At that visit, Hester reported that his back pain had been "excruciating as of late," with pain ranging from 4 to 9 in intensity.  (Tr. 550). Hester stated that the pain was associated with "numbness, tingling, and weakness" and that he had experienced gait changes and balance issues.  (Tr. 550).  However, Hester denied experiencing loss of bowel or bladder control.  (Tr. 550).  Contrary to Dr. Pitkanen's narrative notes, the review of symptoms ("ROS") notes from this visit indicate that Hester reported "no weakness" and "no numbness."  (Tr. 551).  On August 24, 2021, and September 7, 2021, Dr. Pitkanen performed bilateral L2–5 diagnostic medial branch blocks.  (Tr. 541–49).  The record does not indicate what Hester did or did not report during either visit.

Finally, Exhibit 11F contains records of Hester's visit to Capstone Rural Health ("Capstone").  (Tr. 559–99).  Hester visited Capstone for a variety of minor ailments, each time receiving care from CRNP Heather Nunnelley.  On October 15, 2021, Hester visited for

---

[5] A portion of this exhibit is a duplicate of records from Hester's April 6, 2021 visit.  (Tr. 555–58).

depression, hypertension, and sinus problems after children in his home tested positive for strep throat. (Tr. 585–89). CRNP Nunnelley's ROS notes indicate that Hester reported chronic back pain but no muscle weakness, no difficulty walking, no incontinence, no weakness, no numbness, and no gait dysfunction. (Tr. 587). The remainder of Hester's visits at Capstone contain nearly identical ROS notations as they pertain to these symptoms: a December 1, 2021 visit for medication refills (tr. 574–75); a February 2, 2022 visit for anxiety and depression (although this visit also indicates that Hester did not report chronic back pain) (tr. 569–70); and a June 3, 2022 visit for a rash (although this visit does not indicate that Hester did not report muscle weakness as a result of his back pain) (tr. 564).

The evidence above supports the ALJ's determination that Hester did not report incontinence or falling. However, the ALJ's conclusion that Hester did not report other serious symptoms of weakness, numbness, and an abnormal gait is not supported by substantial evidence. Broadly consistent with the discussion above, the Commissioner cites eleven specific pages in the record to support the ALJ's conclusion: 21, 305, 309, 393, 434, 517, 520, 527, 528, and 551. (Doc. 16 at 6–7). Page 21 is simply the ALJ's opinion. Pages 305, 309, and 393[6] are from Hester's pre-onset-date visit to St. Vincent's, and pages 517, 520, 527, and 528 are from Hester's pre-onset-date visits to Dr. Mosley for COVID-19-related symptoms. Evidence from before a claimant's onset date can be relevant when it is probative of the plaintiff's limitations during the relevant time period, *see Douglas v. Comm'r of Soc. Sec.*, 486 F. App'x 72, 75 (11th Cir. 2012), but the Commissioner does not offer any explanation for why the ALJ appropriately relied on Hester's

---

[6] Page 393 contains a description of a physical examination of Hester on January 6, 2021, so it is not clear how that would support whether Hester *reported* symptoms.

reports of symptoms prior to his onset date to undermine post-onset symptoms—particularly given that many of these reports are cursory notations in Dr. Mosley's records when Hester was seeking treatment for COVID-19.  The utility of these pre-onset notations is questionable at best.  *See, e.g., Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 856 (11th Cir. 2018) (finding medical opinions predating claimant's alleged onset date to be "of limited relevance").  Page 434 from Hester's April 2021 visit to Dr. Pitkanen does support that Hester denied incontinence, but nothing more.  Finally, page 551 from Hester's August 9, 2021 visit to Dr. Pitkanen differs from the evidence listed above in that (1) it is from a post-onset visit (2) for a back-pain-related purpose and (3) indicates that Hester denied weakness and numbness.  But Dr. Pitkanen's narrative history of present illness ("HPI") notes on the previous page *directly contradict* the ROS notation by stating that Hester's pain "is associated with numbness, tingling, and weakness."  The ALJ does not appear to have engaged with this contradiction at all, and the Commissioner does not acknowledge it.

The only points in the record from which the ALJ could have derived the idea that Hester denied weakness, numbness, and an abnormal gait are a single notation at St. Vincent's prior to Hester's alleged onset date, Dr. Pitkanen's ROS notation directly contradicting his HPI narrative notes, Dr. Mosley's cursory ROS notes at COVID-19- or hernia-related visits (the vast majority of which predate Hester's alleged onset date), and CRNP Nunnelley's equally cursory ROS notes concerning visits for anxiety, depression, and a rash.  To the extent the ALJ relied on cursory notes at visits unrelated to Hester's back pain to determine that Hester had denied those symptoms, and to the extent that she relied on pre-onset evidence with no explanation for its relevance, her conclusion is not supported by substantial evidence.  *Cf. Crow v. Berryhill*, 358 F. Supp. 3d 1289, 1295 (N.D. Ala. 2019) (finding notations that claimant was "fully oriented and in no acute distress"

at emergency room visits unrelated to mental health provided little support for ALJ to reject treating psychiatrist's assessment).   The same is true to the extent that the ALJ resolved a contradiction in Dr. Pitkanen's notes by choosing the evidence that fit her conclusion while ignoring contrary evidence from the same visit.   *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence.").

As for the remaining portions of the record Hester contends the ALJ mischaracterized, he is incorrect that the ALJ improperly determined his pain was relieved by walking.   At his visits to Dr. Pitkanen in February and April 2021, Hester reported just that.   (Tr. 434, 437).   Hester does not deny that he said this; he simply points to other evidence in the record to support that his gait and balance were impaired and that he walked with difficulty, including a later visit with Dr. Pitkanen indicating that his pain *worsened* with walking (tr. 550).   (Doc. 15 at 13).   That does not change the fact that Hester made the statements at issue in a relevant context.   Although the evidence may preponderate against the ALJ's conclusion, the undersigned cannot say the ALJ mischaracterized the record before her by relying on those statements.

The same is not true for the ALJ's reliance on Hester's purported hobbies of fishing and camping.   Hester did report during a December 3, 2021 psychological evaluation with Dr. John G. Rogers that his "[h]obbies and interests include fishing[,] camping, and watching TV."   (Tr. 498). As Hester notes, his function report indicates that his hobbies and interests "were hiking and camping, fishing but not since injury."   (Doc. 15 at 13–14) (quoting tr. 237).   Further into the function report, Hester states that since his condition began, his social activities have changed in that he longer hikes or camps.   (Tr. 237).   It is not entirely clear from the ALJ's opinion whether she believed Hester still engaged in fishing and camping and thus that his impairments did not

11

preclude those activities, but extrapolating this from a single line in a psychological evaluation is unreasonable given Hester's previous statement that he no longer did either thing—regardless of whether he was *interested* in them in general.

Although the ALJ did not mischaracterize the record by pointing to Hester's statements that walking relieved his back pain, she did as to Hester's purported hobbies and his denials of numbness, weakness, and an abnormal gait. The implications of those mischaracterizations are discussed below.

### B. The ALJ Improperly Evaluated Hester's Credibility

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse credibility determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561–62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 288 (11th Cir. 2009).

When evaluating the credibility of a claimant's statements regarding the intensity,

persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective.  *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p, 2016 WL 1119029 at *3–10.  The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence.  *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16–3p, 2016 WL 1119029 at *3–10.  If an ALJ discredits a claimant's subjective complaints, "he must articulate explicit and adequate reasons for doing so."  *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002).  "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy."  *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011).  *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

The ALJ found Hester's medically determinable impairments could reasonably be expected to cause some of his symptoms, but that Hester's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence of record.[7]  (Tr. 21).  Specifically, the ALJ found several pieces of evidence undermined Hester's claims: (1) records from Dr. Charles Clark indicating that Hester "underwent a surgical evaluation in March 2021, but did not have surgical pathology"; (2) Hester's alleged denials of symptoms; (3) Hester's statements that his pain eased with walking; (4) Hester's purported hobbies of fishing and camping; (5) various normal examination findings; (6) a report

---

[7] Hester criticizes this statement, arguing that the ALJ "acted as her own medical expert" by making it.  (Doc. 15 at 19).  However, this is just a recitation of the pain standard.

from consultative examiner Dr. Timothy Finnegan; and (7) Hester's activities of daily living, including some household chores.[8]  (Tr. 21–22).

As discussed above, the ALJ improperly determined that Hester camped and fished despite his impairments and that Hester denied weakness, numbness, and gait issues.  To the extent that these determinations formed part of the ALJ's credibility analysis, she erred by relying on an erroneous view of the evidence.[9]  Although other evidence in the record might support the ALJ's credibility finding, the symptom evidence the ALJ mischaracterized potentially weighs in *favor* of Hester's credibility.  A new credibility determination giving more credit to Hester's statements might result in a different RFC.  Therefore, the undersigned cannot say that the ALJ's error was harmless.  *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding error harmless when it would not change the outcome).

Moreover, as Hester notes (doc. 15 at 11 n.12), the ALJ appears to have undermined Hester's credibility, to some degree or another, based on normal examination findings predating Hester's onset date.  The ALJ cites Exhibits 1F, 3F, 5F, 6F, 9F, and 10F in support of her conclusion that Hester had "many relatively normal examination findings, including normal upper and lower extremity strength, normal musculoskeletal system range of motion, normal spinal range of motion, normal sensation, normal motor strength, normal coordination, normal reflexes, and

---

[8] Hester challenges two other aspects of the ALJ's credibility determination: Hester's purportedly normal examination findings and his activities of daily living.  (Doc. 15 at 17–22).  The undersigned does not fully reach either of these arguments.  Some aspects of the ALJ's reliance on normal examination findings are discussed below, but the ALJ's determination of the extent to which Hester's activities of daily living impact his ability to work may change based on whether Hester's claims of weakness, numbness, and abnormal gait are credited.

[9] This is particularly true where the statements the ALJ relied on are allegedly Hester's own denials of symptoms he later claimed to have—calling into question not only Hester's credibility about those symptoms but his credibility as a general matter.

negative straight leg raise tests." (Tr. 22). With the exceptions of Exhibits 5F and 6F, these are each discussed above. Exhibit 9F contains a single visit to Dr. Mosley arguably within the relevant time period: January 11, 2021, Hester's exact onset date. It is unclear when on this date Hester's symptoms allegedly progressed to disabling, but in any event his visit to Dr. Mosley was for COVID-19. (*See* tr. 512–14). It is unclear why Dr. Mosley would perform anything but the most cursory musculoskeletal or neurological examination given the nature of the visit. That aside, the lion's share of Exhibit 9F predates Hester's onset date. There is no obvious reason why cursory, but purportedly normal, examination notations during visits for COVID-19 testing and treatment are probative of Hester's complaints of disabling back pain no matter when they occurred, but particularly as far back as seven months before Hester's alleged onset date. Without some legitimate basis for connecting these to Hester's condition on his onset date, the ALJ should not have considered them.[10]

Given the ALJ's erroneous assessment of Hester's symptom reports and her apparent reliance on minimally relevant evidence predating Hester's onset date, remand is necessary for the ALJ to appropriately evaluate Hester's subjective complaints. On remand, the ALJ should (1) consider only evidence that is probative of Hester's complaints, (2) reassess the record evidence, including opinion evidence, in light of that relevant evidence, and (3) make a new credibility determination.

_____

[10] The St. Vincent's records contained in Exhibits 1F and 3F are somewhat different in that they obviously connect to Hester's back pain. Exhibits 1F contains a pre-onset visit from December 9, 2020 at which Hester complained of worsening back pain but had normal range of motion and normal strength. (Tr. 310). Exhibit 3F contains a January 6, 2021 examination at which the examining physician found similar normal symptoms in addition to a normal gait. (Tr. 393). It is possible that these are probative of Hester's condition on his onset date, but it is not so obvious that the ALJ should not have provided some explanation for why she considered them.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Mitchell's claim for a period of disability and disability insurance benefits is **REVERSED**, and this action is **REMANDED**.  A separate order will be entered.

DONE this 22nd day of March, 2024.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE